**Margaret FIGUEROA, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

v.

**Franklin SUNN, individually and in his official capacity as Director of the Department of Social Services and Housing, Defendant–Appellee,**

**and**

**Otis R. Bowen, Secretary of Health and Human Services, Third–Party/Defendant–Appellee.**

No. 87–2572.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 18, 1988.

Decided Sept. 12, 1989.

John Ishihara, Honolulu, Hawaii, for plaintiff-appellant.

Lorenn Walker, Honolulu, Hawaii, for defendant-appellee.

Richard K. Waterman, San Francisco, Cal., for third-party-defendant-appellee.

---

Before CHAMBERS, O'SCANNLAIN and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Plaintiff-appellant Margaret Figueroa, on behalf of all Aid to Families with Dependent Children ("AFDC") recipients subject to offset of temporary disability insurance ("TDI") benefits against AFDC benefits, timely appeals the district court's order granting defendant's and third-party defendant's motions for summary judgment. Figueroa contends the district court incorrectly concluded that Hawaii's practice of characterizing TDI benefits as unearned income and sick pay as earned income was consistent with federal law and regulations and with the Equal Protection Clause of the Fourteenth Amendment. We reverse the order of the district court and remand for further action consistent with this ruling.

## STATUTORY SCHEME

The AFDC program is a cooperative federal-state effort established by Congress to provide financial assistance and other services to needy dependent children and the parents or relatives with whom they live. *See* 42 U.S.C. § 601 (1982). In order to receive federal funds under this program, states must submit and have approved by the Secretary of Health and Human Services ("Secretary") a plan for aid and services that complies with the requirements set forth by the AFDC legislation. *See* 42 U.S.C. §§ 601, 602 (1982 & Supp.1987). Within federally-defined limits, the responsibility for administration of an approved plan lies with the state.

Among the specified purposes of the program is encouraging adult members of families receiving AFDC benefits "to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection." 42 U.S.C. § 601. To further the goal of providing incentives for adult members of AFDC

families to get and keep jobs, Congress added an "earned income disregard" provision to the AFDC program in 1967. S.Rep. No. 97–139, 97th Cong., 1st Sess. 502, *reprinted in* 1981 *U.S.Code Cong. & Ad. News* 768. Under this provision, states determining AFDC benefits were required to disregard from the recipient's total income: "(1) the first $30 earned monthly, plus one-third of additional earnings; and (2) any expenses (including child care) reasonably attributable to the earning of such income." *Id.* at 767. In 1981, as part of the Omnibus Budget Reconciliation Act ("OBRA") and in response to complaints of abuse and administrative complexity, Congress modified the method of calculating the earned income disregard. *Id.* at 768. The current earned income disregard provision, 42 U.S.C. § 602(a)(8)(A), simply specifies dollar and percentage amounts of earned income to be disregarded.

The Secretary has promulgated regulations requiring state agencies to follow particular guidelines in defining earned income for purposes of the disregard. *See* 45 C.F.R. § 233.20(a)(6) (1988). Earned income must encompass "income in cash or in kind earned by an individual through the receipt of wages, salary, commissions, or profit from activities in which he is engaged as a self-employed individual or as an employee." 45 C.F.R. § 233.20(a)(6)(iii). In addition, earned income must exclude "[r]eturns from capital investment with respect to which the individual is not himself actively engaged, as in a business (for example, under most circumstances, dividends and interest would be excluded from "earned income"); benefits (not in the nature of wages, salary or profit) accruing as compensation, or reward for service, or as compensation for lack of employment (for example, pensions and benefits, such as United Mine Workers' benefits or veterans' benefits)." 45 C.F.R. § 233.20(a)(6)(vi).

In accordance with the Secretary's directive to define earned income, Hawaii's Department of Social Services and Housing has promulgated administrative rules. These rules specify that wages, sick pay, vacation pay, holiday pay, cost of living

allowance, birthday pay, tips, and dismissal and severance pay shall be counted as earned income and TDI benefits shall be counted as unearned income. *See* Haw. Adm.Rules 17–621–22, 17–621–26, 17–621–27, and 17–621–28.

### FACTS

Figueroa, a recipient of AFDC, had back surgery in December, 1984. Because of the surgery, Figueroa was temporarily unable to work. She applied for and received Hawaii TDI benefits from December 7, 1984 through June 30, 1985.

In July of 1985, Hawaii's Department of Social Services and Housing notified Figueroa that, because of her receipt of TDI benefits, she had been overpaid AFDC benefits. Had Figueroa's TDI benefits been considered earned income, the earned income disregard provision would have applied to them, and the amount of AFDC benefits to which she was entitled would have been greater.

On August 1, 1986, Figueroa brought a class action against Franklin Sunn, Director of Hawaii's Department of Social Services and Housing, seeking a declaration and an injunction against Hawaii's treatment of TDI benefits as unearned income for purposes of calculating AFDC benefits. Figueroa alleged that this practice was inconsistent with regulations promulgated under the Social Security Act and with the Equal Protection Clause of the Fourteenth Amendment.

On August 18, 1986, Sunn filed a third-party complaint against the Secretary in which he alleged that Hawaii's classification of TDI benefits as unearned income was based on rules, regulations and policies promulgated by the Secretary and that the Secretary should therefore be liable to Hawaii should Figueroa prevail. Both Sunn and the Secretary filed motions for summary judgment in which they contended that categorization of TDI benefits as unearned income was proper as a matter of law. The district court granted these motions and entered summary judgment in favor of defendant and third-party defendant on June 18, 1987. Figueroa timely appealed this judgment. We have jurisdiction under 28 U.S.C. § 1291.

### STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo. *T.W. Elec. Servs. Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987). We may affirm a grant of summary judgment only if we find that no genuine issue of material fact exists and the moving party is entitled to prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Because the facts of this case are not in dispute, we must determine whether defendant and third-party defendant are entitled to prevail as a matter of law.

### DISCUSSION

As noted above, Figueroa contends that Hawaii's characterization of TDI benefits as unearned income violates both regulations promulgated under the Social Security Act and the Equal Protection Clause of the Fourteenth Amendment. We are persuaded by Figueroa's argument that classification of TDI as unearned income violates 45 C.F.R. § 233.20(a)(6). We therefore refrain from deciding the constitutional issue. *See Dandridge v. Williams*, 397 U.S. 471, 475–76, 90 S.Ct. 1153, 1156–57, 25 L.Ed.2d 491 (1970); *Gutierrez v. INS*, 745 F.2d 548, 550 (9th Cir.1984) ("It is well-settled that a court should refrain from deciding a constitutional issue when a nonconstitutional ground for decision is available.") (citations omitted).

45 C.F.R. § 233.20(a)(6) charges states with defining earned income in a manner consistent with the general definition offered therein. In reviewing the Hawaii Department of Social Services and Housing's practice of classifying TDI as unearned income, we are thus concerned with the interpretation of an administrative regulation by the agency charged with its administration. Such an interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the

regulation. *Simpson v. Hegstrom,* 873 F.2d 1294, 1297 (9th Cir.1989); *Buschmann v. Schweiker,* 676 F.2d 352, 355 (9th Cir.1982) (citations omitted).

■ 45 C.F.R. § 233.20(a)(6) defines earned income by drawing a basic distinction between income analogous to wages and income not in the nature of wages.[1] Section 233.20(a)(6)(iii) states in pertinent part that the term "earned income encompasses ... income in kind earned by an individual through the receipt of wages, salary, commissions, or profit from activities in which he is engaged ... as an employee." Income in kind or benefits must, however, be excluded from "earned income" if they are "not in the nature of wages, salary or profit." 45 C.F.R. § 233.20(a)(6)(vi). As noted, the examples of such unearned benefits provided by the regulation are "pensions and benefits, such as United Mine Workers' benefits or veterans' benefits." *Id.*

It would be plainly erroneous for Hawaii to interpret 45 C.F.R. § 233.20(a)(6) in such a way that the regulation is not reasonably related to the purposes of the statute it seeks to implement. *Cf. United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977) ("[R]egulations, in order to be valid must be consistent with the statute under which they are promulgated."); *Thorpe v. Housing Auth.,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474 (1969) (validity of a regulation is dependent on whether it is reasonably related to the purposes of the enabling legislation); *Simpson v. Hegstrom,* 873 F.2d at 1299 (Even though the bare language of the regulation could be read to support the Secretary's interpretation of it, that interpretation was invalid because inconsistent with the Social Security Act.).

The statutory basis for 45 C.F.R. § 233.20(a)(6) is the earned income disregard provision, 42 U.S.C. § 602(a)(8)(A). As stated above, this provision was intended to further the AFDC program's purpose of encouraging adult recipients of AFDC to "attain or retain capability for ... maximum self-support and personal independence." 42 U.S.C. § 601.

Hawaii's practice of simultaneously classifying sick pay as earned income and TDI benefits as unearned income is not reasonably related to the purpose of encouraging adult AFDC recipients to get and keep jobs. Treating sick pay and TDI differently is inconsistent with the purpose of encouraging AFDC recipients to get and keep jobs because the benefits are so similar. TDI and sick pay serve the same purpose of preventing those who are employed but who are temporarily out of work because of illness from having to forfeit all income while they are ill. And both TDI and sick pay are funded by the employer—in the case of TDI through insurance or a bond deposited with the state, and in the case of sick pay, directly from the employer's own coffers. *See* Haw.Rev.Stat. § 392–41. To distinguish between TDI benefits and sick pay in this context is to take away part of the reward for obtaining and holding onto a job from individuals whose employers do not provide a sick pay plan as favorable as the TDI program.[2] Insofar as it serves to increase an AFDC recipient's sense of powerlessness in the face of an arbitrary bureaucracy, reducing that recipient's AFDC entitlement because she happens to receive TDI benefits rather than sick pay while disabled cannot help but discourage her from attaining the capability for maximum self-support and personal independence.

---

1. We note in passing that both federal and Hawaii law indicate there to be a close link between TDI and wages. Section 3(e) of the Omnibus Budget Reconciliation Act of 1981 provides that "payments made under a state temporary disability law shall be treated as remuneration" for purposes of applying the Social Security Act and the Internal Revenue Code. And Haw.Rev.Stat. § 392–22 specifies that the weekly TDI benefit an employee is entitled to receive is calculated by reference to that employee's average weekly wage.

2. One of the ways an employer can comply with Hawaii's TDI scheme is to provide a plan under which employees will receive benefits at least as favorable as those the scheme requires. *See* Haw.Rev.Stat. § 392–41(4). Such benefits would fit Hawaii's definition of earned income as long as the employer called them sick pay.

## CONCLUSION

In the context of the Hawaii administrative rules, Hawaii's practice of classifying TDI as unearned income is plainly erroneous and cannot stand. Figueroa is thus entitled to prevail as a matter of law. We REVERSE and REMAND for further action consistent with this opinion.