912 F.2d 1108
 135 L.R.R.M. (BNA) 2343, 116 Lab.Cas. P 10,272
 UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the
PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED
STATES AND CANADA, LOCAL 32, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the
PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED
STATES AND CANADA, LOCAL 32, AFL-CIO, Respondent.
 Nos. 89-70289, 89-70336.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1990.
Decided Aug. 30, 1990.
 
 Hugh Hafer, Hafer, Price, Rinehart & Schwerin, Seattle, Washington, for petitioner/respondent.
 Judith A. Dowd, Supervisory Atty., Joseph J. Jablonski, Jr., Atty., N.L.R.B., Washington, D.C., for respondent/petitioner.
 On Application for Enforcement of an Order of the National Labor Relations Board.
 Before HUG, NELSON and BRUNETTI, Circuit Judges.
 HUG, Circuit Judge:
 
 I.
 
 1
 The United States Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local 32, AFL-CIO ("the Union"), petitions for review of a National Labor Relations Board ("the Board") decision that the Union violated the National Labor Relations Act's ("the Act") secondary boycott provisions. 29 U.S.C. Sec. 158(b)(4)(ii)(B), Section 8 of NLRA (1988).[1] The Board cross-appeals for enforcement of its order. We grant the Union's petition for review, deny enforcement of the Board's order, and remand for further proceedings.
 
 II.
 
 2
 In 1987, Ramada, Inc., the charging party in this petition, was building a hotel in the State of Washington. After soliciting bids, Ramada chose Baugh Construction Company as the general contractor for the job. Baugh Construction, in turn, subcontracted part of the job to Chapman Mechanical, Inc. Chapman Mechanical was a nonunion plumbing and mechanical firm.
 
 
 3
 In response to the selection of Chapman Mechanical as a subcontractor, Floyd Sexton, local business manager for the Union, sent a letter to the president and chief operating officer of Ramada, with copies to the officials of Baugh Construction. That letter is the subject of this action. It read as follows:
 
 
 4
 It is my understanding that Baugh Construction Company, your general contractor for the Sea-Tac Airport Ramada Inn scheduled to begin soon in Seattle, Washington, will be subcontracting the plumbing work to Chapman Plumbing Company from Tacoma, Washington.
 
 
 5
 This is to advise you that Chapman Plumbing is a nonunion contractor. The wages paid by Chapman to his nonunion workers constitute a serious threat to the standard of living enjoyed by our members.
 
 
 6
 I will establish an aggressive and continuing picketing program for the job site and will do everything necessary to organize the Seattle building trades' support for our picketing program. We will also ask all of our affiliate groups to join with us in not patronizing the Ramada Inns.
 
 
 7
 We will establish a handbilling program to notify prospective customers of problems with the Ramada Inn.
 
 
 8
 Chapman Plumbing has just started doing business in King County. This will be their first major job that we know about.
 
 
 9
 We would prefer to work with you and with Baugh Construction but so far all of our requests to meet with Baugh have been turned down. We will not sit by and let Chapman Plumbing steal work in King County with substandard rates and poor workmanship. It looks like the beginning of a full scale war with the Ramada Inn as the battlefield.
 
 
 10
 Upon receipt of this letter, Baugh Construction filed a charge with the Board alleging violation of the Act's secondary boycott provisions. Based upon this letter alone, the Administrative Law Judge ("ALJ") found that the Union violated the Act's secondary boycott provisions by threatening to: (1) picket the jobsite; (2) ask affiliate groups not to patronize Ramada Inns; and (3) establish a handbilling program, to inform prospective customers of problems with Ramada.
 
 
 11
 The Board affirmed the ALJ and found "that the [Union's] letter constituted an unlawful threat because it contained an unqualified threat to engage in secondary picketing." However, the Board declined to pass on the ALJ's findings concerning the Union's threats to ask affiliate groups not to patronize Ramada and to establish a handbilling program, informing prospective customers of problems with Ramada.
 
 
 12
 As discussed in Section V, we do not reach the issues on which the Board declined to pass.III.
 
 
 13
 We will uphold a Board decision if its findings are supported by substantial evidence and if the Board has properly applied the law. NLRB v. Howard Elec. Co., 873 F.2d 1287, 1290 (9th Cir.1989).
 
 IV.
 
 14
 A union may lawfully picket a jobsite occupied by both primary and secondary employers. See Local 761, Int'l Union of Elec. Workers v. NLRB, 366 U.S. 667, 672-79, 81 S.Ct. 1285, 1288-93, 6 L.Ed.2d 592 (1961); Sailors' Union of the Pacific, 92 NLRB 547 (1950) (Moore Dry Dock ).
 
 
 15
 The ALJ viewed the letter as "an unqualified threat of prospective unlawful picketing." The Board accepted and adopted the ALJ's decision in this regard, with one qualification. The Board attempted to distinguish the present case from our decision in NLRB v. Ironworkers Local 433, 850 F.2d 551 (9th Cir.1988), decided one month after the ALJ's decision.
 
 
 16
 In Ironworkers, the Board found a secondary boycott violation based upon a union's unqualified threat to the secondary employer to picket the "job." The Board concluded that the union violated the Act's secondary boycott provisions because it threatened to picket a common situs without giving assurances that its picketing would be conducted lawfully. Id. at 556. We denied enforcement of the Board's order and held that the Board could not presume that a union's threat to picket the job was a threat to picket contrary to the law, when picketing at the job could be done in a lawful manner. We noted that such a presumption is without foundation in the Act, relevant case law or any general legal principles, and concluded that the Board's holding was "irrational and beyond the Board's authority." Id. at 557.
 
 
 17
 The Board's attempt to distinguish Ironworkers from the present case is unavailing. The Board maintains that in evaluating whether a union's statements constitute an unlawful threat of secondary picketing under Ironworkers, "[t]he primary question is not whether particular words were used, or a disclaimer issued, but how, given the context of the [communication], the union's statements should reasonably be understood." Id. Under this contextual approach, the Board contends that the Union's threat to picket the "jobsite" is reasonably understood as a threat to picket the entire Ramada jobsite unlawfully. Specifically, the Board references the absence of any testimony from the secondary employer (Ramada) that it understood that the threat to picket was directed to the primary employer (Chapman Mechanical). Such testimony was before the Board in Ironworkers. Id. We are not persuaded.
 
 
 18
 The Board in this case did not receive any evidence of what Ramada understood. The only evidence presented in support of a violation was the letter Sexton wrote to Ramada. The letter contained a threat to picket the "jobsite." The Union could have lawfully picketed Chapman Mechanical, the primary employer, at the Ramada jobsite, as long as the picketing was primary in nature. See id. at 554. There is nothing in the letter that justifies a presumption that the Union would not honor a reserve gate system, which is normally established at a common situs. See, e.g., Huber and Antilla Constr. v. Carpenters Local 470, 659 F.2d 1013, 1017-18 (9th Cir.1981), cert. denied, 456 U.S. 977, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982). Although the picketing could turn out to be conducted in an unlawful manner, a presumption that this would take place is not justified from a threat to picket the jobsite.
 
 
 19
 In determining whether the Union demonstrated an impermissible secondary intent, the Board is required to view the totality of the circumstances. Constar, Inc. v. Plumbers Local 447, 748 F.2d 520, 522 (9th Cir.1984). Under Ironworkers, the Board cannot infer that the Union's unqualified threat to picket the common situs would be unlawful. The Union's reference to Ramada as the "battlefield" does not imply that the Union's picketing of the Ramada jobsite would be unlawful. As the common situs in the Union's dispute with Chapman Mechanical, the Ramada jobsite would, indeed, have been the prime location upon which the Union based its fight with Chapman Mechanical, the primary employer. In short, there is nothing in the letter which would permit a conclusion that the Union's picketing would be unlawful.
 
 
 20
 Under Ironworkers, an unqualified threat to picket a jobsite alone does not constitute a violation of the Act's secondary boycott provisions. Ironworkers, 850 F.2d at 557. Therefore, we decline to enforce the Board's order.[2]
 
 V.
 
 21
 In addition to finding that the Union violated the Act's secondary boycott provisions because the letter constituted an unqualified threat to picket unlawfully, the ALJ gave two additional reasons for finding the Union's letter a violation of the Act's secondary boycott provisions. First, the ALJ found that the Union's threat to organize a union boycott of Ramada constituted a violation of the Act. Second, the ALJ found that the Union's threat to establish a handbilling program also constituted a violation of the Act.
 
 
 22
 In its decision, the Board expressly declined to "pass on the judge's findings concerning the threats to handbill and organize a boycott." The Union nevertheless asks this court to review these additional reasons. We decline to do so.
 
 
 23
 It is the Board's application of the law that we review, not the ALJ's. Lippincott Indus., Inc. v. NLRB, 661 F.2d 112, 115 (9th Cir.1981); 29 U.S.C. Sec. 160(e) and (f) (1988). While the ALJ's decision is part of the record, our function is to determine whether the Board's decision, not the ALJ's, is supported by substantial evidence or based on an erroneous legal foundation. NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956); Universal Camera Corp. v. NLRB, 340 U.S. 474, 492-96, 71 S.Ct. 456, 466-69, 95 L.Ed. 456 (1951). Accordingly, because the Board did not decide whether the Union's threats to boycott and handbill violated the Act, we may not review these issues here. See South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs, 425 U.S. 800, 806, 96 S.Ct. 1842, 1845, 48 L.Ed.2d 382 (1976) (appellate court erred in deciding "unit" question not passed on by the Board).
 
 
 24
 We remand this case for a Board decision on the remainder of the ALJ's findings.
 
 VI.
 
 25
 The Union asks for attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. Sec. 504, 28 U.S.C. Sec. 2412(d)(1)(A) (1988). This statute allows an award of attorneys' fees to a prevailing party in an action against a Government agency, when the Government's position was not substantially justified. Immigration and Naturalization Serv. v. Jean, --- U.S. ----, 110 S.Ct. 2316, 2317, 110 L.Ed.2d 134 (1990). The request is premature since the prevailing party in this controversy has yet to be established.
 
 
 26
 REVERSED and REMANDED.
 
 
 
 [1]
 Section 8(b)(4)(ii)(B) of the NLRA, which pertains to the Act's secondary boycott restrictions, provides in relevant part:
 (b) It shall be an unfair labor practice for a labor organization or its agents--
 ....
 (4) ... (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--
 ....
 (B) forcing or requiring any person to cease ... doing business with any other person ... Provided, [t]hat nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise lawful, any primary strike or primary picketing;
 
 
 [2]
 Accordingly, we refrain from deciding the Union's First Amendment argument. See Figueroa v. Sunn, 884 F.2d 1290, 1292 (9th Cir.1989) (court refrains from deciding constitutional issue when there is a nonconstitutional basis for decision)