**Alicia TINOCO, on Behalf of Herself and All Others Similarly Situated, Plaintiffs,**

v.

**Kimberly BELSHE, M.D., Director, California Department of Health Services; California Department of Health Services; Russell Gould, Director, California Department of Finance; California Department of Finance, and Does I–IX, Defendants.**

**Kimberly BELSHE, M.D., Director, California Department of Health Services; California Department of Health Services; Russell Gould, Director, California Department of Finance; California Department of Finance, Third–Party Plaintiffs,**

v.

**Donna SHALALA, Secretary, United States Department of Health and Human Services, Third–Party Defendant.**

No. C–94–0947 WHO.

United States District Court, N.D. California.

Oct. 30, 1995.

---

Jodie Berger, Legal Aid Society of Alameda County, Oakland, CA, Sarah E. Kurtz, Peter H. Reid, Martha S. Hawver, Legal Aid Society of San Mateo County, Redwood City, CA, Katherine E. Meiss, Western Center on Law & Poverty, Inc., Los Angeles, CA, for plaintiffs.

Daniel E. Lungren, California Attorney General, Angela Botelho, Deputy Attorney General, California State Attorney General's Office, San Francisco, CA, for defendants and third-party plaintiffs.

Michael Yamaguchi, United States Attorney, Mark St. Angelo, Beth McGarry, Assistant United States Attorneys, San Francisco, CA, for third-party defendant.

## OPINION AND ORDER

ORRICK, District Judge.

In this case, California recipients of State Disability Insurance ("SDI")[1] who receive Medi–Cal benefits under the Aid to Families With Dependent Children Act ("AFDC") complain that they presently pay $90 per month more than they should, because the State of California ("California") requires them, in violation of the law, in computing the "share of cost"[2] to treat SDI income as *earned* income rather than *unearned* income.

To correct this alleged inequity plaintiff brings this class action against California's health and financial officers, the California Department of Health Services, and the California Department of Finance[3] (collectively "CDHS"), seeking declaratory and injunctive relief compelling them to comply with California and federal law requiring the Medi–Cal program's method of calculating benefits be no more restrictive than the AFDC method that treats SDI income as *earned* income.

---

**1.** A family receives SDI benefits because someone in the family, previously employed, becomes ill or is injured and can no longer work.

**2.** The "share of cost" is similar to a deductible. A Medi–Cal recipient must pay her share of cost each month before Medi–Cal pays the remainder. For example, if a Medi–Cal recipient's share of cost is $100 per month, the recipient must pay the first $100 of medical bills incurred.

**3.** CDHS filed a third-party complaint against the Secretary of Health and Human Services ("HHS"). The third-party defendant is Donna Shalala, Secretary of HHS.

The case is before the Court on cross-motions for summary judgment and HHS' motion to dismiss the third-party complaint. The Court, ruling on the cross-motions for summary judgment holds that SDI income for the purpose of determining the "share of cost" for medical recipients throughout California must be treated as *earned* income, not *unearned* income, thus lowering the share of cost for Medi–Cal recipients by at least $90 per month. HHS' motion to dismiss CDHS' third-party complaint is granted on the grounds of ripeness and standing.

## I.

### A.

Medicaid is a joint federal-state cooperative program established under Title XIX of the Social Security Act to provide health care to needy individuals.[4] States choosing to participate in Medicaid are required to comply with Title XIX of the Social Security Act and with federal regulations implementing the program. 42 U.S.C. § 1396a(a). In return, the federal government shares the costs of Medicaid with participating states.

There are several different categories of people who may be covered by Medicaid, namely, the "categorically needy" and the "medically needy." The "categorically needy" are persons who are eligible for cash assistance under the AFDC program or the Supplemental Security Income ("SSI") program. Participating states must provide coverage to the categorically needy.

The "medically needy" are individuals who satisfy the nonfinancial eligibility criteria for AFDC or SSI, but whose incomes exceed the financial eligibility levels permitted under those programs. States may elect to cover the "medically needy," and California has chosen to provide such coverage calling its program Medi–Cal. Once a state elects to cover the medically needy, it must cover them on an equal basis with the categorically needy. 42 U.S.C. § 1396a(a)(10)(C)(i)(III).

California has mandated that monthly income in its AFDC medically needy ("AFDC–MN") program must be determined "in accordance with Title XIX of the federal Social Security Act." Cal.Welf. & Inst.Code § 14005.7(d) (West 1991). Plaintiff interprets this to mean that monthly income for AFDC–MN Medi–Cal recipients must be calculated in the same manner it is calculated for California AFDC recipients.

To encourage AFDC recipients to work, California has mandated that all federal earned income "disregards" be adopted as part of California's AFDC program. Specifically,

[t]o the extent required by federal law, earned income of a recipient of aid under any public assistance program for which federal funds are available shall not be considered income or resources of the recipient, and shall not be deducted from the amount of aid to which the recipient would otherwise be entitled....

Cal.Welf. & Inst.Code § 11008 (West 1991). The purpose of earned income disregards is to give AFDC recipients incentive to work. If a recipient's grant were reduced by the amount of earned income dollar-for-dollar, there would be no incentive to work.

The application of earned income disregards reduces the amount of the family's countable income when calculating the family's AFDC grant. The disregards include (1) the first $90 of earned income; (2) $30 and one third of the remaining earned income; and (3) actual child care costs up to $175, or $200 for infants. The earned income of students and other children is completely exempt.

Since April 1, 1991, California, through its Department of Social Services ("CDSS"), has treated SDI benefits as earned income in the AFDC program, in accordance with a consent decree in *Sallis v. McMahon,* Sacramento County Superior Court Case No. 364308, filed January 30, 1991.[5] (*See* Pl.'s

---

**4.** Codified at 42 U.S.C. § 1396 and entitled "Grants to States for Medical Assistance Programs."

**5.** According to CDHS, the *Sallis* plaintiffs' challenge relied on the Ninth Circuit opinion in *Fi-*

*gueroa v. Sunn,* 884 F.2d 1290 (9th Cir.1989). In *Figueroa,* recipients of AFDC filed a class action against Hawaii. The plaintiffs complained that Hawaii's classification of temporary disability benefits ("TDI") as unearned income for the pur-

State Statutes, Regulations, and Other Authority, filed Feb. 16, 1995, Ex. 4.) HHS has continued to contribute to the California AFDC program, even after California began to treat SDI payments as earned income for purposes of AFDC. (See Pl.'s Exs. in Supp., filed Feb. 16, 1995, Ex. 1, HHS Mem. to Division of Medicaid.) Specifically, the United States has stated: "We have not approved the State's policy of treating SDI as earned income since we do not approve or disapprove State policy; rather ... we will allow [Federal financial participation] for AFDC payments in which SDI is treated as earned income." Id.[6]

At issue in this case is whether CDHS must treat SDI benefits as *earned* income for the purpose of calculating the share of cost for Medi–Cal recipients. California's Medi–Cal regulations allow similar *earned* income deductions as those allowed for AFDC, except that SDI is treated as *unearned* income. 22 C.C.R. § 50507(a)(5). Determining the proper outcome of the case involves interpreting the requirements of the Medicaid statute.

### B.[7]

Alicia Tinoco ("Tinoco"), the named plaintiff, was employed full time until October 1992, when she stopped working because she needed surgery for a cancerous tumor. She began receiving SDI. In March 1993, she applied for Medi–Cal for herself, her husband, and her three children because she could no longer afford to maintain her private health care coverage. The household would have qualified for AFDC but for the fact that their monthly SDI income was over the AFDC limit. Tinoco sought to participate in the Medi–Cal program as medically needy rather than as categorically needy.

San Mateo County ("County") approved the Tinocos for Medi–Cal, but assigned them a share of cost counting their SDI income as unearned. As discussed above, unearned income is counted dollar-for-dollar for purposes of calculating share of cost, but earned income is subject to several income disregards. The Tinocos were not allowed to take advantage of these disregards. For example, when income is earned, the first $90 is deducted from countable income. Because Tinoco's SDI income was considered unearned, her family could not take advantage of the $90 deduction, and the monthly share of cost was $90 higher than it would have been had the SDI income been computed as earned.

Tinoco requested a hearing in June 1993, in which she challenged the County's treat-

---

poses of determining the amount of earned income disregards received by the plaintiffs under AFDC violated federal law.

The court found that Hawaii's policy violated federal law. In doing so, it looked to the purpose of earned income disregards, which is to provide adults on AFDC incentives to get and keep jobs. *Id.* at 1291. The court based its rationale on the following: (1) Hawaii's practice of counting sick pay as earned and TDI as unearned was not reasonably related to the statutory purpose; and (2) both TDI and sick pay are funded by the employer, further weakening any attempt to distinguish between them. The court noted that the system operated unfairly because workers who were unlucky enough to have inadequate sick pay benefits and were forced to live on TDI were effectively punished by being denied the benefits of the earned income disregards. The court's decision also turned on the fact that both TDI and sick pay serve the same purpose—preventing those who are employed but temporarily out of work because of illness from having to forfeit income while ill. *Id.* at 1293.

CDHS argues that, under *Figueroa*, SDI benefits must be treated as unearned income. For the reasons discussed below, however, the question at issue here turns on the interpretation of the Medicaid statute, not on whether SDI benefits should be treated as earned or unearned income under federal AFDC law.

**6.** Both sides have submitted correspondence between the federal government and state agencies regarding whether the treatment of SDI payments as earned income for the purposes of the state AFDC program violates the federal AFDC statute. Each side argues that the federal government supports its position. The federal government, however, has actually been extremely noncommittal. (*See, e.g.,* Defs.' Reply Br., filed Mar. 9, 1995, Ex. 4, Letter from Sharon Fujii, Oct. 14, 1994), and Ex. 5 (Letter from Sharon Fujii, Feb. 8, 1995.)

**7.** These facts are taken from Plaintiff's Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, filed February 16, 1995. CDHS cannot verify some of these facts, and disputes others. This does not, however, preclude summary judgment. The issue in this case is a question of law because the Court must interpret the Medicaid statute to determine whether SDI benefits must be treated as earned income.

ment of SDI as unearned income. The administrative law judge issued a proposed decision holding that SDI should be treated as earned income, and ordered the County to recompute her share of cost on that basis. The CDHS, however, set aside the proposed decision and upheld the County action. This suit followed. The parties stipulated to certification of the class.

## II.

### A.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment identify evidence that shows the absence of a genuine issue of material fact. Once the moving party has made this showing, the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted).

■ The Court may properly decide this case at the summary judgment stage because the question at issue is a purely legal one: Is it proper for California to treat SDI income as unearned for the purposes of determining the Medi–Cal share of cost but earned for the purposes of determining the proper amount for AFDC grants?

### B.

There is no dispute that under the consent decree issued in *Sallis,* CDSS treats SDI as earned income for the purpose of calculating AFDC earned income disregards. For the purpose of determining the Medi–Cal share of costs, however, CDHS treats SDI benefits as unearned income. Plaintiff argues that this is in plain violation of the Medicaid statute, which states in part that the state's methodology for determining Medicaid eligibility "shall be no more restrictive than the methodology which would be employed ... under the appropriate State plan ... to which such group is most closely categorically related...."[8] 42 U.S.C. § 1396a(a)(10)(C)(i)(III). A methodology is no more restrictive if, "using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance...." 42 U.S.C. § 1396a(r)(2)(B).

The Medicaid statute also specifies that a state's program must "provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ... as would not be disregarded ... in determining his eligibility for such aid, assistance, or benefits...." 42 U.S.C. § 1396a(a)(17)(B). This provision, plaintiff argues, leads to the conclusion that because California's AFDC program treats SDI benefits as earned income, the same earned income disregards must be given to AFDC–MN Medi–Cal families such as the Tinocos.

Plaintiff also argues that federal regulations support her interpretation of the statute. Section 435.601(b) requires states to

---

8. CDHS does not dispute that the appropriate state plan most closely categorically related to Medicaid for the class in this suit is AFDC.

"apply the financial methodologies and requirements of the cash assistance program that is most closely categorically related to the individual's status." 42 C.F.R. § 435.601(b). The rule provides that states may use *less* restrictive methodologies in certain instances, *id.* at § 435.601(d), but it does not allow states to use more restrictive methodologies. In addition, the California statutory provision addressing eligibility of medically needy persons for Medi–Cal assistance states that the share of cost must be "exclusive of any amounts considered exempt as income under Chapter 2" where Chapter 2 sets out the laws governing the California AFDC program. Cal.Welf. & Inst.Code § 14005.7(d).

In order to defeat plaintiff's straightforward argument that California is violating the Medicaid statute, CDHS launches a two-pronged attack. First, it argues that minor revisions in the Code of Federal Regulations signal that the characterization of SDI benefits as earned or unearned income is no longer linked to policies followed under California's AFDC program, but is dependent solely on the requirements of federal law. Second, CDHS argues that there is no violation of federal law because the California state plan document itself does not require that SDI be treated as earned income. Rather, it is treated as such pursuant to the *Sallis* consent decree. It argues that the Social Security Act requires California to treat SDI benefits as earned income in the California state plan itself before it is required to treat these benefits as earned under Medi–Cal. For the reasons discussed below, these arguments are rejected and summary judgment must be granted in favor of plaintiff.

### 1.

CDHS argues that the statute cited by plaintiff does not support her claim that SDI benefits must be accorded the same treatment under Medi–Cal and the California AFDC program. Despite the plain language of the statute, CDHS argues that the characterization of SDI benefits as earned or unearned is a question of interpreting how they would be treated under federal law, without regard to the contents of the California

AFDC plan. It bases this argument on minor changes in the federal regulations associated with 42 U.S.C. § 1396a(a)(10)(C).

Section 435.831(b)(1) formerly provided in relevant part:

(b) Determining countable income. The [state] agency must deduct the following amounts from income to determine the individual's countable income.

(1) For individuals under age 21 and caretaker relatives, the agency must deduct amounts that would be deducted in determining eligibility under the State's AFDC plan.

42 C.F.R. 435.831(b)(1). This version of the regulation clearly supports plaintiff's position. The regulation, however, now provides "[t]o determine an individual's countable income, the agency must deduct amounts that would be deducted in determining income eligibility as provided under § 435.601." 42 C.F.R. § 435.831(b). Section 435.601 provides in part "the agency must apply the financial methodologies and requirements of the cash assistance program that is most closely categorically related to the individual's status." 42 C.F.R. § 435.601(b). CDHS argues that, because the language referring to the "state's AFDC plan" was dropped, whether SDI must be treated as earned income is solely a question of federal law and is not dependent on CDSS's treatment of SDI.

CDHS's argument must be rejected. First, CDHS ignores the plain language of the statute, which refers to the methodology employed "under the appropriate State plan." 42 U.S.C. § 1396a(a)(10)(C)(i)(III). Second, its interpretation of § 435.601 ignores the fact that the regulation discusses the "State plan" in specifying the methodology that must be used. 42 C.F.R. § 435.601(d)(2)(ii). Third, other regulations continue to discuss eligibility determinations based on State plans. Section 435.401 provides in part:

(c) The agency must not use requirements for determining eligibility for optional coverage groups that are—

(1) For families and children, more restrictive than those used under the State's AFDC plan. . . .

42 C.F.R. § 435.401(c)(1). Based on the clear language of the statute and regulations, the way in which a state must treat SDI income under Medi–Cal is linked to the way in which SDI income is treated under state AFDC rules.

### 2.

CDHS also argues that it is not required to treat SDI as earned income for the purposes of calculating Medi–Cal share of cost because the *California* state plan does *not* specify that SDI is treated as earned income under the California AFDC program. Rather, CDSS treats it as such pursuant to the *Sallis* consent decree, which is not part of the California state plan.

The federal statutes at issue refer to "State plans" approved by the federal government. For example, § 1396a(a)(10)(C)(i)(III) uses the language "appropriate State plan." Section 1396a(a)(17)(B) discusses "payments under any plan of the State approved under" various subchapters of the Social Security Act. CDHS uses these references to the California state plan to argue that a consent decree does not come under these statutes. It sets forth in a declaration by a California official that:

> 2. The California AFDC State Plan that is formally approved by the federal government is made up of pre-printed pages that are published by the federal government. These pre-printed pages contain boxes, which a state is to check to indicate specific state policies. There is nothing in the Title IV–A State Plan pre-printed pages approved by the federal government that addresses the policy of DSS to treat California State Disability Insurance (SDI) benefits as earned income.

(Defs.' Mot. in Opp'n, filed Mar. 2, 1995, Ex. 1, Einhoff Decl.) CDHS argues that if the details of a particular state policy do not appear on the face of the AFDC State plan, CDHS can disregard the policy at issue and apply harsher rules than those used by CDSS to calculate AFDC benefits.

CDHS construes the meaning of "State plan" too narrowly. The plain language of the sections discussed here [9] indicates that the "methodologies" discussed in those sections need not be explained on the face of the state plan itself in order to fall under the requirements set forth in § 1396a(a)(10)(C)(i)(III). The statutes discuss methodologies to be employed "under," "for," or "in" the state plan. In addition, the federal government, in its implementing regulations, has contemplated that implementation of the state plan would involve the promulgation of policies, regulations, and standards on a state-wide level. *See* 45 C.F.R. §§ 205.100, 205.120.

CDHS's strained construction of the statute is also contrary to the legislative history and intent underlying the Medicaid statute. The mandate of the statute is to use the same earned income disregards methodology in Medicaid and in AFDC, whether or not this methodology is laid out in the State plan preprinted form. In issuing new regulations, the federal government has stated:

> [U]nder section 1902(a) [10] (10)(C)(i)(III), the methodologies used to determine income and resources eligibility for the medically needy must be the same as those used in determining eligibility under the State plan of the appropriate cash assistance program or the SSI program, whichever is most closely related to the covered medically needy group.

54 Fed.Reg. 39421, 39430.

Nor do cases support CDHS's argument that treatment of SDI as earned income must be laid out on a preprinted form before such treatment becomes part of the state plan. For example, in *Greklek v. Toia*, 565 F.2d 1259 (2d Cir.1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978), plaintiffs challenged New York's practice of treating AFDC and Medicaid recipients differently in computing earned income disregards and exclusions. This differing treatment was set out in various New York state statutes. *Id.* at 1260–61 n. 3. The court held that the state violated the requirements of

---

9. 42 U.S.C. §§ 1396a(a)(10)(C)(i)(III), (a)(17)(B), and (r)(2)(A).

10. Codified as 42 U.S.C. § 1396a.

§§ 1396a(a)(10)(C)(i) and 1396a(a)(17)(B). *Id.* at 1261. There was no discussion indicating that these laws appeared on the "face" of the New York AFDC State plan.

CDHS's argument that it can avoid the effect of the *Sallis* consent decree on Medi–Cal because the terms of the consent decree are not part of the federally approved State plan is not persuasive. The intent of the Medicaid statute would be thwarted if a state could avoid the implementation of certain rules in each program because these rules are not on the face of the state plan. In such a complex area of the law, the federal government expected states to formulate implementing regulations not described in the state plan. Because no principled distinction can be made between state regulations and a consent decree entered into by the state, the terms of *Sallis* must be considered part of California's state plan.[11]

### C.

Thus far, the Court has concluded that (1) the Medicaid statute requires that the methodology for determining eligibility must be no more restrictive than the methodology employed to determine eligibility for AFDC; (2) this methodology is based on the state plan rather than on considerations of federal law alone; and (3) the *Sallis* consent decree must be treated as part of the state plan. This leads to the conclusion that SDI must be treated as earned income for the purposes of determining the Medi–Cal earned income disregards and summary judgment must be granted in favor of plaintiff. Nothing offered by CDHS changes this conclusion.

CDHS argues strenuously throughout its briefs that to treat SDI as earned income would violate federal law, specifically the AFDC statute. CDHS begins by focusing on *Figueroa v. Sunn,* 884 F.2d 1290 (9th Cir. 1989). CDHS argues that under the rule set forth in *Figueroa,* SDI benefits should not be treated as earned income. CDHS also argues that SDI benefits are not "wages" under the SSI program.

CDHS's argument is fundamentally flawed. It is based on the fallacious assumption that the Court must look to the underlying AFDC law to determine whether SDI should be treated as earned income. Nowhere does CDHS explain how this Court may simply ignore the plain language and dictates of the *Medicaid statute,* which requires that the same methodology be used to determine Medi–Cal eligibility as is used to determine eligibility under the state AFDC program. CDHS's argument amounts to nothing more than a collateral attack on the *Sallis* consent decree, which was agreed upon by another agency of California, namely, the CDSS. While CDHS may disagree with CDSS' decision to treat SDI as earned income, the plain fact is that under the Medicaid statute, CDHS is bound to do the same.

Furthermore, even if CDHS were correct in its assertion that SDI is not properly treated as earned income under the AFDC statute, this does not mean that SDI could not be treated as earned income under the Medicaid statute. It is clear that under the Medicaid statute, the methodology employed in determining Medi–Cal benefits may be less restrictive than the methodology used to determine AFDC benefits: "At State option ... the agency may apply income and resource methodologies that are less restrictive than the cash assistance methodologies in determining eligibility of ... (v) [m]edically needy individuals...." 42 C.F.R. § 435.601(d)(1)(v). *See also* 42 U.S.C. § 1396a(a)(10)(C)(i)(III) (methodology shall be "no more" restrictive than that employed in state plan). Therefore, treating SDI benefits as earned income under the Medicaid statute does not violate federal law.

---

11. The consent decree has also been implemented through state regulation. Section 44–101.51 of the State Manual of Policies and Procedures indicates that "[e]arned income is income received in cash or in kind as wages, salary, employer provided sick leave benefits, *State Disability Insurance benefits....*" (Emphasis added.) It would not be prudent to consider some regulations part of the California state plan and other not part of the California state plan depending upon the underlying reason for implementation of the regulation. The fact that the consent decree is memorialized in California state regulations shows that no principled distinction can be made between this regulation and the regulations at issue in *Greklek.*

### D.

Under the clear dictates of the Medicaid statute, plaintiff is entitled to summary judgment against CDHS. Accordingly, CDHS shall be enjoined from enforcing § 50507(a)(5) of Title 22, California Code of Regulations, which classifies SDI benefits as unearned income for the purposes of determining the amount of assistance for which an individual is eligible and for the purpose of calculating the share of cost under the Medi–Cal program. The Court will hold a status conference to discuss further relief to which the class is entitled and the procedures required to notify the class of their rights under this Opinion and Order.

### III.

CDHS has brought a third-party complaint against the United States, specifically the Secretary of HHS. The third-party complaint requests the following:

> If plaintiff prevails against defendants (third-party plaintiffs) in the underlying complaint in this action and the Court orders defendants (third-party plaintiffs) to change their regulations and policies and treat SDI benefits as earned income for the purposes of the Medi–Cal Program, the Court should also order third-party defendant to provide federal financial participation to defendants (third-party plaintiffs) in any payments made to plaintiff or to the class she may represent, regardless of third-party defendant's interpretation of federal statutes and regulations.

(Third Party Compl., filed Mar. 29, 1994, ¶ 33.)

The United States argues that the third-party complaint must be dismissed on the following grounds: (1) the complaint fails to state a justiciable claim; (2) CDHS lacks standing to maintain the action; and (3) the third-party complaint fails to comply with Rule 14 of the Federal Rules of Civil Procedure. The Court finds that the third-party complaint must be dismissed because it is not ripe and because CDHS lacks standing as required by Article III of the United States Constitution.

### A.

██ Article III of the Constitution of the United States mandates that federal courts adjudicate only actual cases or controversies. *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). If a case is not "ripe" for judicial review, then the federal court lacks jurisdiction because there is no case or controversy. *See* Erwin Chemerinsky, *Federal Jurisdiction* § 2.4 (1989). A case is ripe for judicial review if the issues are fit for judicial decision and hardship would result to the party asserting jurisdiction if review is withheld. *Abbott Lab. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1966). With respect to administrative decisions, the Supreme Court has noted that the ripeness doctrine's purpose is to prevent courts from interfering in an administrative decision "until [it] has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148–49, 87 S.Ct. at 1515–16. Unless the impact of the administrative action is "direct and immediate," the case is not ripe for judicial review. *Id.* at 152, 87 S.Ct. at 1517.

██ Currently, there is no justiciable controversy between the United States and CDHS. CDHS's claim is not ripe, because its suit is based on pure speculation that federal financial participation ("FFP") may be withdrawn if this Court requires SDI to be treated as earned income under Medi–Cal. This is contrary to HHS regulations, which require FFP in State expenditures "[f]or services provided within the scope of the Medicaid Program and made under a court order." 42 C.F.R. § 431.250(b)(2). Absent evidence to the contrary, this Court must presume that HHS will act within the law. *Blinder, Robinson & Co. v. United States SEC*, 748 F.2d 1415, 1418 (10th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).

This case is virtually indistinguishable from *Johnson v. Rank*, 110 F.R.D. 99 (N.D.Cal.1986), in which a complaint brought by CDHS against HHS was dismissed. In *Johnson*, plaintiffs brought a class action to enjoin the CDHS from its alleged failure to implement federal regulations allowing Med-

icaid recipients certain deductions from income before the income was required to be applied to nursing home costs. CDHS moved to join the United States pursuant to Rule 14(a) of the Federal Rules of Civil Procedure on the ground that FFP should be required if the plaintiffs prevailed in the suit.

The *Johnson* court denied CDHS's motion on two bases. First, it found that because the third-party complaint was not based upon the plaintiffs' claim against California, but was a wholly separate claim, joinder was not appropriate under Rule 14(a). *Id.* at 101. Second, it found that the plaintiffs' claim was not justiciable as required by Article III, because "several contingencies must occur before a disallowance of FFP will result." *Id.* These contingencies include the state failing HHS's "quality control program" by having an error rate of greater than three percent, and the federal government refusing to waive the disallowance upon a showing by the state of a "good faith" effort to reduce the error rate. *Id.* at 100–01. These contingencies would also have to be met in this case before California would be charged with a disallowance. *See* 42 C.F.R. § 431.800 *et seq.* As in *Johnson,* this case is not ripe for judicial review.

CDHS's argument in opposition to HHS's motion to dismiss the third-party complaint focuses on the fact that this Court would be making a purely legal determination in ordering HHS to continue financial participation. Because this is so, "hardship" to HHS is reduced. *See Abbott,* 387 U.S. at 154, 87 S.Ct. at 1518. Furthermore, the hardship to California is great because of the financial liability involved and because the federal government has been equivocal in indicating whether it will continue FFP if SDI is treated as earned income.

CDHS's argument does not lead to the conclusion that this potential conflict between California and the United States is sufficiently ripe for judicial review. The hardship to CDHS resulting from dismissal of the complaint is purely speculative, because, as discussed above, federal regulations currently require HHS to provide FFP for court-ordered benefits. If withdrawal of FFP were imminent, the claim would be ripe. This,

however, is not the case. The federal government has never indicated that it would ignore its own regulations and refuse to provide FFP if SDI is treated as earned income under Medi–Cal. Therefore, CDHS's claim against HHS is not ripe.

### B.

■ Justiciability doctrine underlying Article III requires that a party have standing to bring a claim. In order to demonstrate that a party has standing, the following requirements must be met: (1) the party must show that it has suffered some actual or threatened harm as a result of the illegal conduct of the defendant; (2) the injury must be fairly traceable to the challenged action; and (3) the injury must be likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

■ CDHS lacks standing because it has not alleged a sufficiently concrete threat of harm. As discussed above, California would lose FFP only if HHS decided to disobey its own regulations or abandon them. Because the possibility of future disallowance of FFP is remote, CDHS does not have standing to pursue the third-party action against HHS at this time. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 n. 2, 112 S.Ct. 2130, 2138 n. 2, 119 L.Ed.2d 351 (1992) (Article III requires that injury by "*certainly* impending").

### IV.

Accordingly,

IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED.

2. CDHS' motion for summary judgment is DENIED.

3. HHS' motion to dismiss CDHS's third-party complaint is GRANTED on the grounds of ripeness and standing.

4. CDHS' policy, as set forth in § 50507(a)(5) of Title 22, California Code of Regulations is illegal, and in violation of

§ 14005.7 of the Welfare and Institutions Code, 42 U.S.C. §§ 1396a(10)(C), (r)(2), and (a)(17)(B), and 42 C.F.R. § 435.601.

5. CDHS is permanently enjoined from enforcing § 50507(a)(5) of Title 22, California Code of Regulations, and is further enjoined from failing to treat SDI as it is treated in the AFDC program and affording it all the earned income deductions and exclusions afforded SDI in California's AFDC program.

6. CDHS must adopt regulations forthwith, and must as soon as practicable communicate this policy to all appropriate county officials in this state.

7. A case management conference will be held on Thursday, November 9, 1995, at 2:00 p.m., to discuss further remedies to which the class is entitled as well as procedures for notifying the class of their rights under the terms of this Opinion and Order.