**Mary McBRIDE and Charles McBride, Petitioners**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 3, 2008.

Decided Nov. 7, 2008.

---

Mary McBride and Charles McBride, petitioners, pro se.

Dale T. Jenkins, Asst. Counsel and Allen C. Warshaw, Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and BUTLER, Judge.

OPINION BY Judge FRIEDMAN.

Mary and Charles McBride (together, Petitioners) petition *pro se* for review of the October 24, 2007, final order of the Secretary of the Department of Public Welfare (DPW), which upheld the determination of an administrative law judge (ALJ) that Petitioners are ineligible for Medical Assistance and Food Stamps. We affirm.

The relevant facts are not in dispute. On November 22, 2006, the Allegheny County Assistance Office (CAO) authorized payment of Medical Assistance and Food Stamps for Petitioners and their children. At all relevant times, Mary McBride had a net monthly earned income of $325.56, derived from providing childcare services, and Charles McBride was self-employed and the sole proprietor of Chaz McBride Painting and Wallcovering. In December 2006, after suffering a stroke, Mr. McBride began receiving weekly disability benefits in the amount of $485 pursuant to a disability insurance policy purchased through the SMC Business Councils Benefits Trust. An invoice for the policy lists Chaz McBride Painting and Wallcovering as the employer and Charles McBride as the covered employee. (Record Item 4, Exhibit A–9.) On January 4, 2007, after Mr. McBride reported the receipt of these benefits, the CAO issued notices informing Petitioners that their Medical Assistance and Food Stamps benefits would be discontinued because the family's income exceeded the eligibility limits for both programs. Petitioners timely appealed both decisions.

At a February 2007 hearing before the Bureau of Hearings and Appeals (BHA), Petitioners argued that the disability payments should be characterized as sick pay because Mr. McBride is self-employed. For purposes of determining eligibility for Medical Assistance and Food Stamps, sick pay is treated as earned income, from which certain expenses related to employment may be deducted in the calculation of net income. (Record Item 4, Exhibits C–3 and C–4; 7 C.F.R. § 273.9(b)(1); 55 Pa. Code § 181.271.) Mr. McBride explained that he continued to have business expenses, such as insurance and storage rental, that he must meet in order to keep his business viable until he returns to work.[1] Petitioners sought to deduct these business expenses from their combined earned income.

■ CAO caseworker Mark Wagner testified that applicable regulations require that disability insurance payments be treated as unearned income, rather than as a continuation of Mr. McBride's wages. (N.T. at 16; Record Item 4.) *See, e.g.,* 7 C.F.R. § 273.9(b)(2)(ii) (stating that unearned income includes retirement, veteran's or disability benefits); 55 Pa.Code

---

1. Mr. McBride testified that, although he had not returned to work since November 2006, he intended to return to work, and his doctor anticipated that he would be able to return to work, part-time in May 2007 and full-time in June 2007. (N.T. at 36.)

§§ 181.101, 181.281 (stating that disability benefits are counted as unearned income). CAO supervisor Roberta Petkovich added that the payments were considered to be unearned income because they came from an insurance company and not an employer. (N.T. at 31.) By order dated March 16, 2007, the BHA denied Petitioners' appeals and held that the CAO correctly concluded that the disability benefits constituted unearned income, rendering Petitioners ineligible for Medical Assistance and Food Stamps.[2] After granting reconsideration, the Secretary affirmed the BHA's decision, and Petitioners now appeal to this court.[3]

■ There is no question that the regulations governing eligibility for Medical Assistance and Food Stamps designate disability benefits as a type of unearned income. The regulations do not differentiate between disability benefits received by an employee and disability benefits received by a self-employed individual. However, Petitioners argue that the fact that Mr. McBride is self-employed is significant. Petitioners note that: Mr. McBride's business pays the premiums for the disability insurance; the documents related to the disability insurance policy describe the payments as "employee benefits"; and Mr. McBride deposited the disability insurance checks into his business account to pay business expenses before paying himself. Petitioners assert that, for these reasons, the disability benefits should be treated the same as sick pay benefits provided by an employer to an employee.

Both parties rely on *Goldstein v. Department of Public Welfare*, 654 A.2d 295 (Pa.Cmwlth.1995), in which the court distinguished disability benefits from sick pay.[4] In *Goldstein*, the petitioner's husband was permanently, partially disabled as a result of a work-related injury and received disability benefits pursuant to a disability insurance policy paid for by his employer. As in this case, DPW considered the disability benefits to be unearned income, and, as a result, DPW determined that the net income of the petitioner's household exceeded the eligibility limits for purposes of Medical Assistance. The petitioner argued that the disability payments should be treated as sick pay, relying in part on check stubs indentifying the payments as such.

The court in *Goldstein* first concluded that the terms "sick pay" and "disability benefits" are not ambiguous and should be given their plain, everyday meaning. The court next observed that the terms are distinguishable, even though they may ov-

---

2. Based on Mr. McBride's testimony that he continued to pay premiums for the disability insurance, the ALJ recalculated Petitioners' income and determined that it was lower than the limit for the children's Medical Assistance category. Accordingly, the ALJ held that two of the McBrides' three children were eligible for Medical Assistance benefits; the remaining child, who has cerebral palsy and epilepsy, receives Healthy Horizons Medical Assistance benefits. (ALJ's Findings of Fact, No. 8.)

3. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. *Perna ex rel. Bekus v. Department of Public Welfare*, 807 A.2d 310 (Pa.Cmwlth.2002).

4. Petitioners also cite *Tinoco v. Belshe*, 916 F.Supp. 974 (N.D.Cal.1995), which held that California violated federal law by treating state disability insurance payments as earned income for its cash assistance program but as unearned income for purposes of determining eligibility for the state's medical assistance program. Because the issues presented are distinguishable, we conclude that *Tinoco* offers no guidance with respect to the present appeal.

erlap in some instances. The court stated that sick pay normally is understood to be a continuation of an employee's wages while the employee is temporarily unable to perform his duties due to illness but remains employed and intends to return to work for the same employer when he recovers. In contrast, the court described disability benefits as payments from an employer-paid insurance policy to an employee who is unable to perform his job due to a disability. Noting that the evidence established that the petitioner's husband was permanently disabled from returning to his previous employment, the court upheld DPW's determination that the payments received by the petitioner's husband were disability payments and were properly characterized as unearned income.

■ Although the decision in *Goldstein* is somewhat lacking in clarity and the case is somewhat distinguishable, we nevertheless conclude that the court's reasoning is instructive in the present matter.[5] In particular, we agree with the court's observation that sick pay normally is understood to be a continuation of wages paid by an employer to an employee, whereas disability benefits are paid by an insurer under an insurance policy. Applying this distinction, we conclude that it makes no difference that Mr. McBride is self-employed, that he intended to return to his employment or that he deposited the disability benefit payments into his business bank account. Instead, we conclude that be-

cause the disability payments were made to Mr. McBride pursuant to a policy of insurance and originated from an insurer, not Mr. McBride's business, DPW properly characterized the payments as disability benefits rather than sick pay.

Accordingly, we affirm.

## ORDER

AND NOW, this 7th day of November, 2008, the final order of the Secretary of the Department of Public Welfare, dated October 24, 2007, is hereby affirmed.

---

**5.** The court in *Goldstein* focused in part on the fact that the employee was permanently disabled; however, we recognize that an employee who is only temporarily disabled also may be eligible for disability benefits. In addition, although the court in *Goldstein* appeared to distinguish an inability to work due to illness from an inability to work due to disability, the court did not elaborate upon the difference between those concepts. We note that an illness can indeed result in tem-

porary or permanent disability, and an employee may be eligible for disability insurance benefits based upon temporary or permanent disability that results from an illness. Therefore, although these factors were cited in *Goldstein*, we conclude that the nature of the employee's physical condition and/or the employee's intent concerning a return to work are not decisive factors in determining the nature of the employee's income under the regulations at issue here.